Thomas J. Lloyd III, ISB No. 7772
MILLER NASH LLP
950 W. Bannock Street, Suite 1100
Boise, Idaho 83702
Tel: (208) 906-3072
Fax: (503) 224-0155
Email: Thomas.Lloyd@MillerNash.com

*Attorneys for Alterra Mountain Company U.S. Inc.,*
*and Husky Mountain Acquisition Inc.*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCHWEITZER MOUNTAIN PROPERTIES, LLC, an Idaho limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>HUSKY MOUNTAIN ACQUISITION INC., a Delaware corporation, and ALTERRA MOUNTAIN COMPANY U.S. INC., a Delaware corporation,<br><br>        Defendants.<br><br>HUSKY MOUNTAIN ACQUISITION INC., a Delaware corporation, and ALTERRA MOUNTAIN COMPANY U.S. INC., a Delaware corporation,<br><br>        Counterclaimants,<br><br>    v.<br><br>SCHWEITZER MOUNTAIN PROPERTIES, LLC, an Idaho limited liability company,<br><br>        Counterdefendant. | Case No. 2:26-cv-00104-REP<br><br>**ANSWER AND COUNTERCLAIM AND DEMAND FOR JURY TRIAL** |

**ANSWER AND COUNTERCLAIM - 1**

COME NOWS Defendants Husky Mountain Acquisition Inc. ("Husky") and Alterra Mountain Company U.S. Inc. ("Alterra") (collectively, "Defendants"), by and through the undersigned counsel, pursuant to Federal Rule of Civil Procedure 7(a) and 13(a), and hereby answers and responds to the Complaint filed by Plaintiff Schweitzer Mountain Properties, LLC ("Plaintiff") in the District Court of the First Judicial District of the State of Idaho, in and for the County of Bonner on January 28, 2026 (the "Complaint"). Except as expressly admitted below, Defendants specifically deny each and every allegation of Plaintiff's Complaint, including any and all allegations directed to parties other than Husky.

## ANSWER TO COMPLAINT

### PARTIES

1. In response to Paragraph 1 of Plaintiff's Complaint, Defendants admit the allegations contained therein upon information and belief.

2. In response to Paragraph 2 of Plaintiff's Complaint, Defendants admit the allegations contained therein.

3. In response to Paragraph 3 of Plaintiff's Complaint, Defendants admit the allegations contained therein.

4. In response to Paragraph 4 of Plaintiff's Complaint, no factual allegations are asserted therein and thus no response is required from Defendants. To the extent that a response from Defendants is necessary, Defendants deny that it is appropriate to refer to Husky and Alterra jointly as "Alterra" for purposes of the cause of action asserted in Plaintiff's Complaint, as the two entities are separate and distinct, and Alterra is not a signatory to the Lease agreement that forms the subject matter of Plaintiff's Complaint.

///

**ANSWER AND COUNTERCLAIM - 2**

**JURISDICTION AND VENUE**

5.   In response to Paragraph 5 of Plaintiff's Complaint, Defendants have removed this case pursuant to 28 U.S.C. § 1441, and on that basis they deny that jurisdiction over this matter is proper in the District Court of the First Judicial District of the State of Idaho. By way of further response, Defendants affirmatively aver that, pursuant to 28 U.S.C. § 1332(a), jurisdiction over this matter is proper in the United States District Court for the District of Idaho as there is complete diversity of citizenship as between the Plaintiff and the Defendants in this matter and the amount in controversy, inclusive of the Counterclaims asserted herein, exceeds the sum of $75,000.00. Additionally, venue is proper in the United States District Court for the District of Idaho pursuant to 28 U.S.C. § 1391(b)(1) because the property that is the subject of this action is situated in this judicial district in Bonner County, Idaho.

**GENERAL ALLEGATIONS**

6.   In response to Paragraph 6 of Plaintiff's Complaint, Defendants admit only that Plaintiff and Husky entered into an agreement dated August 22nd, 2023, titled "Parking Lease and Right of First Offer Agreement (Fall Line Parking Lot)" (the "Lease"), but deny all other allegations contained within Paragraph 6, express or implied.

7.   In response to Paragraph 7 of Plaintiff's Complaint, Defendants admit only that the referenced document speaks for itself and deny any and all allegations, express or implied, that are inconsistent with that document.

8.    Defendants admit that the initial Lease term was for a period of ten (10) years, to continue until at least the tenth (10th) anniversary of the effective date of August 22, 2023, and otherwise deny any and all other allegations, express or implied.

**ANSWER AND COUNTERCLAIM - 3**

9. In response to Paragraph 9 of Plaintiff's Complaint, Defendants admit only that the referenced document speaks for itself and deny any and all allegations, express or implied, that are inconsistent with that document. Husky further denies that the content of the Lease accurately reflects the true agreement of Plaintiff and Husky and affirmatively avers that the Lease does not reflect the true agreement of Plaintiff and Husky with respect the language quoted, as the parties' true agreement, first proposed by Plaintiff, was that the Lease was to last for a 10-year term with no provision for cancellation or early termination due to development plans by Plaintiff.

10. In response to Paragraph 10 of Plaintiff's Complaint, Defendants admit only that Plaintiff unilaterally purported to provide an ineffective and invalid termination of the Lease on or about February 20, 2025, but deny all other allegations contained within Paragraph 10, express or implied.

11. In response to Paragraph 11 of Plaintiff's Complaint, Defendants admit only that the referenced document speaks for itself and deny any and all allegations, express or implied, that are inconsistent with that document.

12. In response to Paragraph 12 of Plaintiff's Complaint, Defendants admit only that the referenced documents speak for themselves and specifically deny that Plaintiff's notice of termination of the Lease was proper or that the Lease accurately reflects the true agreement of Plaintiff and Husky with regard to the term and termination clauses of the Lease.

13. In response to Paragraph 13, Defendants admit only that Plaintiff purported to "extend" its invalid and unilateral termination of the Lease, but specifically deny (1) that the parties ever had an agreement regarding such termination, (2) that Plaintiff had the ability to unilaterally terminate the Lease, and (3) that the Lease accurately reflects the true agreement of

**ANSWER AND COUNTERCLAIM - 4**

Plaintiff and Husky with regard to the term and termination clauses of the Lease.

14. In response to Paragraph 14 of Plaintiff's Complaint, Defendants admit only that the referenced document speaks for itself and deny any and all allegations, express or implied, that are inconsistent with that document.

15. In response to Paragraph 15 of Plaintiff's Complaint, Defendants admit only that it has not accepted Plaintiff's efforts to unilaterally terminate the Lease (specifically denying that Plaintiff has the "termination rights" that it claims), that the parties never reached an agreement regarding any proposed termination dates, and that Plaintiff last extended its unilateral termination date to December 1, 2025. By way of further response, Defendants affirmatively aver that Plaintiff's last extension of its unilateral effort to terminate the Lease (via email dated November 21, 2025) expressed an intention to extend the Lease to December 1, 2026.

16. In response to Paragraph 16 of Plaintiff's Complaint, Defendants deny the allegations contained therein, because as previously stated, Husky had no obligation to vacate the Leased Premises by December 1, 2025, and therefore could not have "failed" to do so.

17. In response to Paragraph 17 of Plaintiff's Complaint, Defendants admit only that the referenced document speaks for itself, and deny all allegations, express or implied, inconsistent with that document. Defendants further specifically deny any and all allegations contained within Paragraph 17 of the Complaint which imply that Plaintiff had any right to backdate a termination of the Lease to December 1, 2025.

18. In response to Paragraph 18 of Plaintiff's Complaint, Defendants admit only that the referenced document speaks for itself and deny any and all allegations, express or implied, that are inconsistent with that document.

19. In response to Paragraph 19 of Plaintiff's Complaint, Defendants admit the

**ANSWER AND COUNTERCLAIM - 5**

allegation contained therein.

20. In response to Paragraph 20 of Plaintiff's Complaint, Defendants admit only that the referenced document speaks for itself and deny any and all allegations, express or implied, that are inconsistent with that document.

21. In response to Paragraph 21 of Plaintiff's Complaint, Defendants admit only that the referenced document speaks for itself and deny any and all allegations, express or implied, that are inconsistent with that document.

22. In response to Paragraph 22 of Plaintiff's Complaint, Defendants admit only that the referenced document speaks for itself and deny any and all allegations, express or implied, that are inconsistent with that document.

23. In response to Paragraph 23 of Plaintiff's Complaint, Defendants admit the allegation contained therein.

**CLAIMS FOR RELIEF**

**COUNT I**
**Declaratory Judgment – Termination of the Lease**

24. In response to Paragraph 24 of Plaintiff's Complaint, Defendants incorporate and restates all prior responses to the allegations of the Complaint as if fully stated herein.

25. Paragraph 25 of Plaintiff's Complaint does not assert any factual allegations requiring a response from Defendants. To the extent any response is required, Defendants admit only that the referenced Idaho Code speaks for itself, and deny any and all allegations, express or implied, that are inconsistent with the plain and unambiguous meaning of the referenced Code section.

26.  Paragraph 26 of Plaintiff's Complaint states a legal conclusion and does not assert any factual allegations requiring a response from Defendants. To the extent any response

**ANSWER AND COUNTERCLAIM - 6**

is required, Defendants admit only that the referenced Idaho Code speaks for itself, and deny any and all allegations, express or implied, that are inconsistent with the plain and unambiguous meaning of the referenced Code section(s).

27. In response to Paragraph 27 of Plaintiff's Complaint, Defendants admit the allegation contained therein.

28. In response to Paragraph 28 of Plaintiff's Complaint, Defendants deny the allegation contained therein.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
(Failure to State a Claim)

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
(Mutual Mistake)

Plaintiff is not entitled to relief on its Complaint, as the parties to the Lease agreement that is the subject of Plaintiff's claim were mutually mistaken as to the content of the final draft of the Lease, whether by scrivener's error/oversight or otherwise, such that both parties intended and believed that the Lease would be subject to a non-terminable 10-year term, but the final draft of the Lease inadvertently included contrary language that was intended instead for certain other leases that were being negotiated and executed simultaneously.

### THIRD AFFIRMATIVE DEFENSE
(Unilateral Mistake)

Plaintiff is not entitled to relief on its Complaint, as Defendants were unilaterally mistaken as to the content of the final draft of the Lease, whether by scrivener's error/oversight or otherwise, such that the Lease was not drafted and executed in accordance with the parties' true agreement, including that it would be subject to a non-terminable 10-year term, and Plaintiff

**ANSWER AND COUNTERCLAIM - 7**

is guilty of inequitable conduct either in failing to advise Defendants that the final draft of the Lease did not conform to the parties' true agreement or in attempting to take advantage of the as-written Lease upon realizing that it did not conform to the parties' true agreement instead of honoring the parties' true agreement.

### FOURTH AFFIRMATIVE DEFENSE
### (Reformation)

Plaintiff is not entitled to relief on its Complaint, as the Lease that forms the subject matter of the Complaint is and should be subject to judicial reformation to conform to the parties' true agreement, including but not limited to provisions establishing a fixed ten (10) year non-terminable term, and until reformed, the Lease cannot be enforced in the manner asserted by Plaintiff.

### FIFTH AFFIRMATIVE DEFENSE
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

Plaintiff is not entitled to relief on its Complaint, as its efforts to terminate the Lease constitute a breach of the covenant of good faith and fair dealing implied in the Lease.

### SIXTH AFFIRMATIVE DEFENSE
### (Equitable Estoppel)

Plaintiff is not entitled to relief on its Complaint, as Plaintiff represented, directly and/or through conduct, that the Lease would provide Husky with a fixed ten (10) year term, and Defendants reasonably relied upon those representations by entering into the Lease, expending substantial funds, and committing to long-term business operations at the Premises. Defendants' reliance was foreseeable and if the Lease is terminated, Defendants' reliance was detrimental. Plaintiff is therefore estopped from asserting a right to early termination inconsistent with the parties' true agreement.

**ANSWER AND COUNTERCLAIM - 8**

## SEVENTH AFFIRMATIVE DEFENSE
### (Promissory Estoppel)

Plaintiff is not entitled to relief on its Complaint, as Plaintiff made clear and definite promises that Husky would have a ten (10) year lease term not subject to unilateral early termination, and Defendants reasonably and foreseeably relied upon those promises to its detriment.

## EIGHTH AFFIRMATIVE DEFENSE
### (Waiver)

Plaintiff is not entitled to relief on its Complaint, as Plaintiff has waived any right (which Husky disputes) to terminate the Lease effective December 1, 2025.

## NINTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

Plaintiff is not entitled to relief on its Complaint, as Plaintiff has engaged in inequitable conduct by attempting to exploit a drafting omission that does not reflect the parties' true agreement. Because Plaintiff does not come before the Court with clean hands, equitable relief is barred.

## RESERVATION OF RIGHTS

Consistent with Federal Rules of Civil Procedure 12 and 15, Defendants reserve the right to amend this Answer and to assert other defenses as this action proceeds.

## PLAINTIFF'S DEMAND FOR ATTORNEYS' FEES AND COSTS

Defendants deny that Plaintiff is entitled to prevail in its claim, and therefore denies that Plaintiff is entitled to an award of attorneys' fees and costs. To the contrary, Defendants are entitled to an award of their attorneys' fees and costs in defending against Plaintiff's claim and in asserting their rights by way of the below-stated Counterclaim, pursuant to Idaho Code §§ 12-

**ANSWER AND COUNTERCLAIM - 9**

120(3) and 12-121, the terms of the Parties' Lease, Idaho Rule of Civil Procedure 54, and any other applicable contract, statute, law or rule.

## PLAINTIFF'S PRAYER FOR RELIEF

In response to Plaintiff's Prayer for Relief, Defendants deny that Plaintiff is entitled to any of the relief sought thereby.

## COUNTERCLAIM

Pursuant to Federal Rule of Civil Procedure 13(a)(1)(A), Defendants/Counterclaimants Husky Mountain Acquisition Inc. and Alterra Mountain Company U.S. Inc. hereby allege and counterclaim against Plaintiff Schweitzer Mountain Properties, LLC, as follows:

## PARTIES

1.   Counterclaimant Husky Mountain Acquisition Inc. ("Husky") is, and at all relevant times hereto has been, a Delaware corporation with its principal place of business located in Denver, Colorado.

2.   Counterclaimant Alterra Mountain Company U.S. Inc. ("Alterra") is, and at all relevant times hereto has been, a Delaware corporation with its principal place of business located in Denver, Colorado.

3.   Counterdefendant Schweitzer Mountain Properties, LLC ("SMP"), upon information and belief, is and at all times relevant hereto has been, an Idaho limited liability company with its principal place of business located in Sandpoint, Bonner County, Idaho. Upon information and belief, SMP is a subsidiary of Schweitzer Mountain, LLC.

## JURISDICTION AND VENUE

4.   This Court has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1332(a), as this action involves a controversy between citizens of different states and

ANSWER AND COUNTERCLAIM - 10

the amount in controversy is in excess of the jurisdictional minimum of $75,000 exclusive of interest and costs. Further, this Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367(a), as the claims set forth in this Counterclaim are related to the claims asserted in the Plaintiff's Complaint in this action, which Defendants have removed pursuant to 28 U.S.C. § 1441(b).

5.  Venue is proper in this district under 28 U.S.C. § 1391(b)(2), as a substantial amount of the events giving rise to this Counterclaim occurred in the state of Idaho, and the property that formed the subject matter of the parties' Lease agreement is also located in the state of Idaho.

**GENERAL ALLEGATIONS**

6.  This dispute involves certain real property located on Schweitzer Mountain in Bonner County, Idaho, which real property has historically been used as a parking lot for the Schweitzer Mountain Resort and known as the "Fall Line" parking lot.

7.  The Schweitzer Mountain Resort and ski area is located at 10000 Schweitzer Mountain Road, Sandpoint, ID 83864 ("Schweitzer"), and has been in operation since 1963. Schweitzer's mountain operations includes one base area, two summits, two skiable basins, and approximately 2,900 skiable acres. The base area (known as the "Village") consists of several buildings, including hotels, a ski and snowboard shop, several restaurants, an activity center, and a spa.

8.  In the late 2010s, Counterdefendant SMP, the then-owner of certain property located in and around the Village, determined to construct additional lodging, dining and spa offerings in the Village, including what ultimately became what is now known as the Humbird Hotel (the "Humbird" or "Humbird Hotel") (a free standing hotel), the Cambium Spa (an

**ANSWER AND COUNTERCLAIM - 11**

addition to the existing Selkirk Lodge), and the 5 Needles Hotel (an addition to the existing White Pine Lodge).

9. On or around June 1, 2023, Alterra, an indirect parent of Husky, entered into an Asset Purchase Agreement ("APA") with the MKM Trust and Schweitzer Mountain, LLC ("Seller") for the purchase of the Resort by Alterra (the "Transaction").

10. Upon information and belief, at the time the APA was executed, Seller was a parent company and/or member of Counterdefendant SMP.

11. The Transaction was substantially complex, involving *inter alia* the sale of assets (including real property and fixtures), assignments of contract rights, leases of additional real property, and the sale of water rights, liquor licenses, and hotel licenses. The APA included as Exhibits thereto several additional documents that the parties contemplated executing at the closing of the Transaction.

12. "Exhibit J" to the APA, titled "Form of Parking Lot Lease Agreements," provided a draft form of the Parking Lease that the parties intended to be used for the various parking lot areas over which Seller and/or SMP was retaining ownership and Husky and/or Alterra was intending to Lease to accommodate the parking needs for its commercial operations at the Resort.

13. The form "Parking Lease" included as Exhibit J to the APA generally provided the term and termination clauses to be incorporated into each separate parking lease, including that the majority of the parking leases would be subject to one (1) year automatically-renewing terms with a provision allowing SMP to terminate those leases for development purposes, subject to a Right of First Offer ("ROFO") should Alterra/Husky wish to first purchase the leased

**ANSWER AND COUNTERCLAIM - 12**

premises. However, Exhibit J also included a drafting footnote to address certain changes to specific leases, which read:

> **Notes to Draft**: See proposed exhibit showing parking areas attached. Parking lot names and key terms to be revised as follows: (1) Lakeview Lot lease will be for the Term stated below and a ROFO; (2) Gateway Lot for the Term stated below and a ROFO; **(3) Fall Line lease will be for a 10 year term, with Buyer covering taxes, and will also include the ROFO**; (4) North Village Lane (Block D, Lot 2) will include provisions for shared use of the existing trail crossing this lot, and 2 parking stalls to be maintained by SMP, and will include a ROFO; (5) South Village Lane lease (Block J, Lot 4) will automatically expire in April 2024 and will not include a ROFO; (6) provisions for parking by owners of nearby condo units.

(Emphasis added.)

14. That is, by the drafting notes for the form Parking Lease attached to the signed APA, Seller and SMP agreed that the Lease for the Fall Line parking lot would not include the standard one (1) year renewable term, but instead an initial, fixed, ten (10) year term that would be incompatible with an earlier development termination right, such that any development termination right would not become available until the end of the initial ten (10) year term when the Lease also converted to automatically-renewing one (1) year terms.

15. Alterra specifically negotiated for the Fall Line Lease to be treated differently than the leases for other parking areas because the Fall Line parking lot is unique. It is one of the largest relatively flat surface areas available for parking and adjacent to the resort. While Alterra could work around the loss of some of the smaller lots being leased back from Seller, loss of the Fall Line parking lot could be catastrophic for the Resort's operations. Seller and SMP, who had been operating the Resort for many years, acknowledged and understood the unique nature of the Fall Line parking lot, which is why they agreed to treat it differently than other lots being leased.

**ANSWER AND COUNTERCLAIM - 13**

16. The inclusion of the note that the Fall Line Lease was to include a 10-year term was consistent with earlier communications between Seller and Alterra leading up to the execution of the APA:

    a.  On April 26, 2023, representatives from Alterra met in person with Mr. Dennis Weibling, Seller's President and SMP's Vice President, to discuss outstanding terms related to the Transaction;

    b.  On April 27, 2023, Alterra sent an email to Mr. Weibling to memorialize and suggest minor revisions to what the parties had discussed the day prior during their in-person meeting. Among the terms proposed, Alterra wrote:

> **Fall Line lot will be leased for 10 years with no provision for conversion to developed property**. The lease fee for the Fall Line lots will be the real estate tax costs each year plus a prorated portion of insurance. . . . Seller will grant to Buyer a ROFO for the Fall Line lot.

(Emphasis added.)

    c.  On April 28, 2023, the parties had further discussion regarding potential revisions to the overall Transaction, and Mr. Weibling emailed "marked changes" to Alterra the evening of April 28, 2023. The majority of Mr. Weibling's changes related to aspects of the Transaction other than the Fall Line parking lease. Relative to the Fall Line parking lease, Mr. Weibling's proposed changes added the following language:

> Fall Line lot will be leased for 10 years with no provision for conversion to developed property. The lease fee for the Fall Line lots will be the real estate tax costs each year plus a prorated portion of insurance. Lance estimates current tax at about $18K per year. Seller will grant to Buyer a ROFO for the Fall Line lot.

ANSWER AND COUNTERCLAIM - 14

    d.   On May 1, 2023, Alterra responded to Mr. Weibling's proposed changes, and again summarized the agreed-upon terms of the Transaction. Regarding the Fall Line parking lease, Alterra noted:

- Seller to retain ownership of all developable parking lots (Lakeview, Gateway, and Fall Line); buyer to have a ROFO on Lakeview, Gateway, and Fall Line lots for the reasons mentioned above
  …
- Fall Line lease terms
  - 10 year lease to Buyer for $1 / year plus taxes and insurance

    e.   Also on May 1, 2023, Mr. Weibling sent an email responding to Alterra's summary of agreements relative to the Transaction, in which he confirmed that the addition of a ROFO for the Lakeview and Gateway parking lots "makes sense" and that Seller was in agreement to the terms summarized by Alterra, including those for the Fall Line parking lot, writing "The rest looks good to me."

17. The non-terminable ten (10) year term for the Fall Line parking lot lease discussed in the email communication between Alterra and Seller/SMP between April 27, 2023 and May 1, 2023 matches the non-terminable ten (10) year term for the Fall Line parking lot lease described in Exhibit J to the APA.

18. Between May 1, 2023 and June 1, 2023, the date of the APA, there were no discussions by and between, on the one hand, Seller and/or SMP, and on the other hand, Alterra or Husky, in which the parties discussed, changed, or altered their agreement that the Fall Line lease would have a ten (10) year non-terminable term.

19. Following execution of the APA, Alterra and Seller closed on the Transaction in August, 2023.

**ANSWER AND COUNTERCLAIM - 15**

20. Between June 1, 2023, the date of the APA, and August, 2023, when the parties closed on the Transaction, there were no discussions by and between, on the one hand, Seller and/or SMP, and on the other hand, Alterra or Husky, in which the parties discussed, changed, or altered their agreement that the Fall Line lease would have a ten (10) year non-terminable term.

21. In conjunction with the closing of the Transaction, the parties (and/or their subsidiaries or assignees) executed numerous documents pertinent to various aspects of the Transaction, including five (5) parking lot leases for the following parking areas: (1) the "Gateway" lot, (2) the "Lakeview" lot, (3) the "North Village Lane" lot, (4) the "South Village Lane" lot, and (5) the "Fall Line" lot.

22. The "Parking Lease and Right of First Offer Agreement (Fall Line Parking Lot)" (the "Lease") was executed by SMP and Husky on August 22, 2023.

23. Exhibit A to the Lease set forth the "Description and Depiction of the Leased Premises," identifying as the Leased Premises:

> PARCEL 1: (Fall Line Parking Lot) Lots 6, 7, 8, 9 and 10 in Block 5 of Second Addition to Schweitzer Basin Village, according to the official plat thereof, filed in Book 3 of Plats at Page 53, records of Bonner County, Idaho.
>
> PARCEL 2: (Fall Line Parking Lot) Lots 1, 2, 3, 4, 5 and 6 in Block 4 of Second Addition to Schweitzer Basin Village, according to the official plat thereof, filed in Book 3 of Plats at Page 53, records of Bonner County, Idaho.

24. Exhibit B to the Lease set forth the terms for the "Right of First Offer," including Section 2(a) thereof:

> At any time during the Term of this Agreement, if Landlord intends to offer, negotiate or propose to enter into any Opportunity Transaction, Landlord shall first provide Tenant an opportunity to purchase the ROFO Property in accordance with the procedures set forth in this Section 2.

**ANSWER AND COUNTERCLAIM - 16**

25. Due to an inadvertent scrivener's error, the as-drafted term and termination clauses of the Lease did not reflect the written, mutual agreement of the parties that the Lease would have a ten (10) year non-terminable term, as noted in Exhibit J to the APA and the email communications between the parties prior to executing the APA.

26. However, pursuant to paragraph 14.j of the Lease, the parties agreed to execute simultaneously with the Lease (for County recording purposes) a document titled "Memorandum of Parking Lease and Right of First Offer Agreement (Fall Line Parking Lot)," the form for which was attached as Exhibit C to the Lease.

27. Exhibit C to the Lease, the "Form of Memorandum of Lease," consistent with the APA and the discussions of the parties prior to executing the APA, stated the term of the Lease was for a ten (10) year period:

> The Lease Agreement provides that the Term of the Lease Agreement expires on the tenth (10th) anniversary of the Effective Date and that the Term is automatically extended for additional periods of one (1) year(s) each unless earlier terminated in accordance with the terms and conditions set forth in the Lease Agreement.

28. On August 22, 2023, the "Memorandum of Parking Lease and Right of First Offer Agreement – Fall Line Parking Lot," signed by Mr. Dennis Weibling as Vice President of SMP, was recorded in the books and records of Bonner County, Idaho, Instrument # 1024291 ("Memorandum of Lease").

29. When the Lease was signed, neither Alterra nor Husky realized that the Lease did not accurately reflect the separate term and termination clauses that had been specifically negotiated with Seller for the Fall Line parking lot.

30. Subsequent to the closing of the Transaction, certain disputes have arisen by and between Seller/SMP and Alterra, unrelated to the Fall Line Lease.

**ANSWER AND COUNTERCLAIM - 17**

31. In February, 2025, in the midst of the unrelated disputes and seeking to take advantage of the scrivener's error in the Lease, SMP provided notice of purported termination of the Lease to Husky/Alterra, despite knowing that it had agreed – through the APA, the communications between the parties, and the recorded Memorandum of Lease – that the Lease was to have a ten (10) year term not subject to a development termination clause.

32. Throughout 2025, as the parties continued to navigate their disputes, SMP periodically "extended" its purported termination of the Lease several times.

33. On November 21, 2025, SMP delivered an email to Alterra indicating that it intended to "extend the time for the Fall Line lease till 12/1/**26**." (Emphasis added.)

34. At no point has Alterra or Husky agreed that SMP has any right under the parties' agreement to an early termination of the Fall Line Lease, as any such termination is inconsistent with the true agreement reached between the parties.

35. Shortly after Seller terminated negotiations regarding its ongoing disputes with Alterra, on December 12, 2025, SMP delivered a letter to Alterra again seeking to terminate the Lease, attempting to backdate the purported Lease termination to December 1, 2025 in contravention of the parties' agreements regarding the Fall Line Lease.

36. The Fall Line parking lot is one of Counterclaimants' primary parking locations for customers visiting the Resort as day skiers and patronizing the various restaurants, services and amenities located in the Village. Because of the mountainous terrain, available relatively flat surfaces for parking close to the Resort are difficult to find and Fall Line parking lot is one of the largest available spaces on the mountain that can be used for parking. Because of its convenient location and size, the Fall Line parking lot is unique, is central to the Resort's operation, and

**ANSWER AND COUNTERCLAIM - 18**

even if comparable amount of parking could be found somewhere else, it could not truly replace the Fall Line parking lot.

37. If Counterclaimants were to lose access to and use of the Fall Line parking lot, they would be forced to identify and either purchase or lease an alternative location for parking, which would likely be located down-mountain from the Resort and would require additional shuttle service to accommodate guests and customers.

38. The Fall Line parking lot is comprised of approximately six (6) acres of land.

39. The Fall Line Lease was signed on August 22, 2023, meaning the ten (10) year term agreed upon by the parties would expire in August, 2033. Seven (7) years remain under the initial intended term of the Lease.

40. Costs for leasing a similarly-sized (but likely less convenient) alternate location(s) to serve Counterclaimants' customers' parking needs would likely be a minimum of $100,000 per year, not including ancillary costs for down-mountain shuttle and/or valet services. Development of such alternate parking would also take time (likely more than one ski season) and loss of the Fall Line parking lot in the interim would severely hamper the Resort's operations and ability to serve its customers.

## CAUSES OF ACTION

### Count I – Reformation

41. Counterclaimants hereby reincorporate all of the foregoing paragraphs of this Counterclaim as if fully set forth herein.

42. Through discussions and emails between Seller/SMP and Alterra in April and May, 2023, the parties agreed that the Lease would have a ten (10) year term not subject to an early termination clause even if Seller/SMP wished to develop the property.

**ANSWER AND COUNTERCLAIM - 19**

43. In June, 2023, Seller and Alterra executed the APA, which included a form parking lot lease that noted the Fall Line Lease term would be different than the other parking lot leases to be executed at the same time, in that it would have a ten (10) year term rather than a shorter term subject to termination by SMP.

44. In August, 2023, SMP and Husky executed the Lease.

45. Also in August, 2023, SMP and Husky executed the Memorandum of Lease, which document was recorded with the Bonner County recorder and noted that the Lease was for a ten (10) year term.

46. The Lease, itself, indicated that the initial term was to be for ten (10) years, but failed to omit the form language the parties intended to apply to the other parking lot leases simultaneously executed, permitting the Seller/SMP to unilaterally terminate the Lease if Seller planned to develop the property on which the parking lot is situated.

47. The failure to omit the development termination clause from the Fall Line Lease was the result of a scrivener's error in the drafting of the Lease.

48. The failure to omit the development termination clause for the Fall Line Lease was the result of a mutual mistake by and among the parties thereto.

49. Alternatively, the failure to omit the development termination clause from the Fall Line Lease was the result of a unilateral mistake by Alterra/Husky, about which SMP either had knowledge at the time the Lease was executed or has subsequently learned and now seeks to inequitably exploit for its own benefit.

50. Because of the scrivener's error and/or mistake of the parties, or one of them, the Lease does not conform to the parties' true agreement.

**ANSWER AND COUNTERCLAIM - 20**

51. Husky is entitled to reformation of the Lease to comport with the parties' true agreement, including a ten (10) year fixed term not subject to unilateral termination by SMP for development of the property.

### Count II – Breach Of Contract

52. Counterclaimants hereby reincorporate all of the foregoing paragraphs of this Counterclaim as if fully set forth herein.

53. Counterclaimants and Seller/SMP entered into a valid and enforceable contract for the Transaction, which contract (by Exhibit J thereto) included an agreement to execute a lease for the Fall Line parking lot for a ten (10) year term not subject to an early termination clause.

54. Counterclaimants have met all of their contractual obligations under the Transaction contract documents.

55. By filing the Complaint in this action and knowingly seeking to take advantage of a scrivener's error in the drafting of the Lease, SMP, individually and as subsidiary to Seller, has materially breached the terms of the parties' contract documents, including but not limited to the covenant of good faith and fair dealing implied in both the APA and the Lease.

56. SMP, individually and as subsidiary to Seller, has materially breached the terms of the parties' contract documents by, *inter alia*, failing to acknowledge that the true agreement of the parties is not reflected in the Lease and failing to abide by the true agreement of the parties with respect to the Fall Line parking lot.

57. SMP, individually and as subsidiary to Seller, has further breached the covenant of good faith and fair dealing implied in the parties' Transaction contract documents, including the APA and the Lease, by failing to acknowledge that the true agreement of the parties is not reflected

**ANSWER AND COUNTERCLAIM - 21**

in the Lease and failing to abide by the true agreement of the parties with respect to the Fall Line parking lot.

58. As a direct and proximate consequence of SMP's material breach of the contract documents, Counterclaimants will suffer damages and incur losses in amounts to be proven at trial, including but not limited to damages associated with leasing and/or purchasing alternative real property to accommodate customer parking needs.

59. As a further direct and proximate consequence of SMP's material breaches of the Transaction contract documents, Counterclaimants have been forced to retain the services of Miller Nash LLP to prosecute this action. Pursuant to Idaho and Federal Rules of Civil Procedure 54, Idaho Code § 12-120(3) and the terms of the Transaction contract documents, Counterclaimants are entitled to an award of their costs and fees incurred in defending against SMP's Complaint and prosecuting this Counterclaim.

**Count III – Anticipatory Breach Of Contract/Repudiation**

60. Counterclaimants hereby reincorporate all of the foregoing paragraphs of this Counterclaim as if fully set forth herein.

61. Under Idaho law, when one party to a contract clearly and unequivocally repudiates its contractual obligations before performance is due, the non-breaching party may treat the repudiation as an anticipatory breach.

62. SMP's assertion of a right to terminate the Lease prior to expiration of the agreed ten-year term, set forth in its Complaint in this action, constitutes a clear and unequivocal repudiation of its contractual obligation (under both the APA and the Lease) to provide Counterclaimants with possession of the leased premises for the entirety of that term.

63. SMP's repudiation is material and goes to the essence of the Lease.

**ANSWER AND COUNTERCLAIM - 22**

64. Counterclaimants have fully performed their obligations under the APA and the Lease.

65. As a direct and proximate consequence of SMP's anticipated breaches and/or repudiation of the Transaction contract documents, Counterclaimants are entitled to all remedies available under Idaho law for anticipatory breach of contract, including expectation damages, foreseeable consequential damages, and/or specific performance of the parties' agreement to a ten-year lease term.

66. As a further direct and proximate consequence of SMP's anticipated breaches and/or repudiation of the Transaction contract documents, Counterclaimants have been forced to retain the services of Miller Nash LLP to prosecute this action. Pursuant to Idaho and Federal Rules of Civil Procedure 54, Idaho Code § 12-120(3) and the terms of the Transaction contract documents, Counterclaimants are entitled to an award of their costs and fees incurred in defending against SMP's Complaint and prosecuting this Counterclaim.

## Count IV – Declaratory Judgment (Quasi-Estoppel)

67. Counterclaimants hereby reincorporate all of the foregoing paragraphs of this Counterclaim as if fully set forth herein.

68. An actual, present, and justiciable controversy exists between the parties concerning SMP's claimed right to terminate the Lease prior to expiration of the agreed ten (10) year term.

69. Under Idaho law, the doctrine of quasi-estoppel precludes a party from asserting a position inconsistent with one previously taken where it would be unconscionable to permit the change in position, particularly where that party has accepted benefits under the prior position.

70. Seller and SMP previously:

ANSWER AND COUNTERCLAIM - 23

a. Negotiated and agreed to a fixed ten (10) year lease structure;

b. Represented, expressly and/or implicitly, that Counterclaimants would enjoy a ten-year term not subject to unilateral early termination;

c. Induced Counterclaimants to enter into the APA with the understanding that they would have uninterrupted access to and use of the Fall Line parking lot for ten (10) years post-Transaction; and

d. Accepted the economic benefits of Counterclaimants' execution of the Transaction.

71. Counterclaimants reasonably relied upon Seller/SMP's conduct and position in committing substantial financial and operational resources to the Transaction.

72. SMP now seeks to assert a contrary interpretation of the Lease to obtain a right of early termination that is inconsistent with its prior conduct and the parties' agreed allocation of risks and benefits.

73. Permitting SMP to reverse its position would result in unfair advantage to SMP and corresponding detriment to Counterclaimants.

74. Based upon the foregoing, Counterclaimants are entitled to a judicial declaration, pursuant to the Idaho Declaratory Judgment Act, Idaho Code § 10-1201, *et seq.*, and/or the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, that SMP is barred under the doctrine of quasi-estoppel from asserting a right to terminate the Lease prior to expiration of the agreed ten (10) year term, and that the ten (10) year Lease term is not subject to a unilateral early termination by SMP based on its stated intention to develop the leased premises.

### Count V – Declaratory Judgment (Promissory Estoppel)

75. Counterclaimants hereby reincorporate all of the foregoing paragraphs of this

**ANSWER AND COUNTERCLAIM - 24**

Counterclaim as if fully set forth herein.

76. SMP made clear and definite promises that Counterclaimants would receive a fixed ten (10) year lease term not subject to unilateral early termination for development of the leased premises by Seller/SMP.

77. SMP reasonably expected that Counterclaimants would rely upon those promises in deciding to execute the Lease and commit resources to the Transaction.

78. Counterclaimants reasonably relied upon those promises by:

    a.   Entering into the Transaction and the Lease;

    b.   Expending substantial sums for the Transaction;

    c.   Entering long-term financial and operational commitments; and

    d.   Foregoing alternative locations and opportunities.

79. Counterclaimants' reliance on SMP's promises was substantial, foreseeable, and detrimental.

80. Injustice can be avoided only by enforcing SMP's promises consistent with the agreed ten (10) year non-terminable term.

81. Based upon the foregoing, Counterclaimants are entitled to a judicial declaration, pursuant to the Idaho Declaratory Judgment Act, Idaho Code § 10-1201, *et seq.*, and/or the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, that SMP is bound under the doctrine of promissory estoppel and barred from terminating the Lease prior to expiration of the ten-year term.

## RESERVATION OF RIGHTS

Counterclaimants have made the foregoing allegations based upon information presently known to them. However, discovery in this matter has not yet begun, and Counterclaimants reserve

**ANSWER AND COUNTERCLAIM - 25**

the right to amend this Counterclaim if the evidence obtained through discovery in this action reveals new or additional causes of action available to them. Moreover, both Husky and Alterra have asserted these counterclaims, as both parties were sued here; however, Husky alone signed the Lease and Counterclaimants reserve the right to seek dismissal of Alterra on that basis at a future time.

## ATTORNEY FEES AND COSTS

Counterclaimants have been required to obtain the assistance of counsel in the prosecution of this Counterclaim, and are therefore entitled to recover their reasonable costs and attorney fees incurred in this action, pursuant to the terms of the APA and the Lease, Federal Rule of Civil Procedure 54, and Idaho Code §§ 12-120(3) and 12-121, as well as pursuant to any other laws and rules applicable to the facts and claims set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimants pray for entry of judgment in their favor and against Counterdefendant SMP, as follows:

A. For Judgment in their favor and against SMP on this Counterclaim;

B. For an order reforming the Lease to conform to the true agreement of the parties at the time they entered into the Transaction;

C. For an order declaring the rights and obligations of the parties under the Transaction contract documents, including but not limited to an order that SMP is estopped from unilaterally terminating the Fall Line Lease during the ten (10) year period, except for events of default identified in the Lease, and that Alterra is not a party to the Lease and is therefore not a proper party to Plaintiff's Complaint;

**ANSWER AND COUNTERCLAIM - 26**

D.  For all relief allowable by law for SMP's breaches, anticipated breaches, and/or repudiation of the Transaction contract documents, including the APA and the Lease, including an award of expectation damages, an award of foreseeable consequential damages, and/or an order of specific performance;

E. For their reasonable and actual attorney fees and costs incurred in pursuit of this Counterclaim, pursuant to the express terms of the parties' contracts, Federal Rule of Civil Procedure 54, Idaho Code §§ 12-120(3) and 12-121, and any other applicable rule or law; and

F. For such other relief as the Court deems just and equitable.

DATED: <u>March 4, 2026</u>          MILLER NASH LLP


_____
Thomas J. Lloyd III, ISB No. 7772

*Attorneys for Defendants*

**ANSWER AND COUNTERCLAIM - 27**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the 4th day of March, 2026, I caused to be served a true and correct copy of the foregoing by the method indicated below and addressed to the following:

Bradley J. Dixon, ISB No. 6167
Chynna K. Castoro, ISB No. 10610
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho 83701-2720
Office: (208) 388-1200
Fax: (208) 388-1300
bradleydixon@givenspursley.com
chynnacastoro@givenspursley.com

☐ U.S. Mail
☐ Hand Delivery
☐ Federal Express
☐ Via Facsimile
☒ ECF / Email

*Attorney for Plaintiff*

_____
Thomas J. Lloyd III

**ANSWER AND COUNTERCLAIM - 28**